IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENOVEVA RAMIREZ LAGUNA, | |
| *Plaintiff,* | Case No. 1:17-cv-6695 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); ELAINE DUKE, Acting Secretary, Department of Homeland Security; JAMES McCAMENT, Acting Director, USCIS; DONALD NEUFELD, Associate Director of Service Center Operations, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); THOMAS HOMAN, Acting Director of ICE; RICARDO WONG, ICE Field Office Director, Chicago Area of Responsibility, | |
| *Defendants.* | |

**COMPLAINT FOR AN ORDER TO COMPEL ADJUDICATION UNDER THE ADMINISTRATIVE PROCEDURE ACT AND WRIT OF MANDAMUS**

**INTRODUCTION**

1. This case is about Genoveva Ramirez Laguna, a 67-year-old woman and grandmother of nine and great-grandmother of one, whom Defendant U.S. Immigration and Customs Enforcement (ICE) is trying to imminently deport, despite the many equities in her favor, and despite the fact that she has a long-pending "U" visa application. ICE informed Ms. Ramirez that she must depart the United States no later than October 26, 2017, or be forcibly deported.

2. Ms. Ramirez has an avenue to stay here through a "U" visa, but there is little likelihood that Defendant U.S. Citizenship and Immigration Services (USCIS) will adjudicate her application before the end of October. A U visa is intended for immigrant victims of crime who cooperate with law enforcement in the investigation or prosecution of such crimes. 8 U.S.C. § 1101(a)(15)(U). Ms. Ramirez was the victim of a violent break-in in her home in 2015 in which the perpetrators physically assaulted her and her grandson. Thus, she is statutorily eligible for a U visa.

3. Ms. Ramirez filed her U visa application in September 2016, but delays have caused U visa applicants to wait as many as three years for USCIS to adjudicate their applications. But Ms. Ramirez does not have another two years to wait due to the deadline that ICE has arbitrarily imposed.

4. Despite the fact that USCIS and ICE are both sub-agencies of the Department of Homeland Security, ICE has not asked USCIS to expedite Ms. Ramirez's application, nor has USCIS made any effort to do so. In aggressively seeking to remove Ms. Ramirez while her U visa application is still pending, ICE frustrates the purpose of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), which Congress enacted to protect immigrant victims of crime. *See* Pub. L. No. 106–386, 114 Stat. 1464 (2000).

5. Accordingly, Ms. Ramirez asks the Court to order USCIS to either (a) make a *prima facie* determination that she is eligible for a U visa such that she can get a stay of removal from ICE; or (b) adjudicate her U visa application so that she can stay in the United States.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), as it arises under the Administrative Procedure Act, 5 U.S.C. § 702, and the federal mandamus statute, 28 U.S.C. § 1361.

7. The United States' sovereign immunity is waived under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706.

8. The Court has the authority to issue a declaratory judgement under the Declaratory Judgement Act, 28 U.S.C. §§ 2201-02 and Rule 47 of the Federal Rules of Civil Procedure.

9. Venue properly lies within the Northern District of Illinois because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b). Ms. Ramirez currently resides in Berwyn, Illinois.

## PARTIES

10. Plaintiff Genoveva Ramirez Laguna is a 67-year-old Mexican national who has lived in the United States since 2001.

11. Defendant DHS is a Department of the Executive Branch of the United States government, located in Washington, DC, and is responsible for enforcing federal laws governing border control, customs, trade and immigration to promote homeland security and public safety.

12. Defendant Elaine C. Duke is sued in her official capacity as the Acting Secretary of the Department of Homeland Security. In this capacity, she directs each of the component agencies within DHS, including ICE. As a result, in her official capacity, Acting Secretary Duke is responsible for the administration and enforcement of the immigration laws.

13. Defendant USCIS, also a component of DHS, is the agency charged with, among other things, adjudicating applications for U visas.

14. Defendant James McCament is sued in his official capacity as the Acting Director of USCIS, the Agency charged with adjudicating Plaintiff's U visa application.

15. Defendant Donald Neufeld is sued in his official capacity as the Associate Director of Service Center Operations. The Vermont Service Center, which Mr. Neufeld oversees, is charged with adjudicating all U visa applications.

16. Defendant ICE is a component of DHS, located in Washington, DC, and is in charge of enforcing federal immigration law, including arresting and detaining non-citizens.

17. Defendant Thomas Homan is sued in his official capacity as the Acting Director of ICE, which is the sub-agency of the Department of Homeland Security. Acting Director Homan is responsible for enforcement and removal operations for ICE, including the present enforcement action.

18. Defendant Ricardo Wong is sued in his official capacity as the Field Office Director (FOD) of the ICE Chicago Field Office, which has responsibility for Illinois, Indiana, Wisconsin, Missouri, Kentucky, and Kansas. In his official capacity, FOD Wong has ultimate responsibility for all enforcement actions conducted out of the Chicago Area of Responsibility.

## STATEMENT OF FACTS

### A. Ms. Ramirez's Background and Immigration History

19. Ms. Ramirez came to the United States from Mexico with her family in 2001. Three of her children live in the United States, as do eight of her nine grandchildren and her great-grandchild. She is the primary caretaker for her grandson, Mariano, a United States citizen,

who lives with her. She has a very close relationship with all of her family members. Ex. A, Affidavit of Genoveva Ramirez Laguna at ¶ 38.

20.     Ms. Ramirez has an outstanding removal order based on an incident where she was driving close to the Northern border with her family. Unknowingly, she drove near the U.S.-Canadian border. When she approached the border checkpoint on the U.S. side, Border Patrol stopped and questioned her and issued a Notice to Appear, charging her as removable as someone who is in present in the country without authorization. 8 U.S.C. § 1227(a)(1)(B). An Immigration Judge in Buffalo, New York, ordered her removed in absentia in 2006. Ms. Ramirez was living in the Chicago area at that time.

21.     Ms. Ramirez has been an activist and organizer in her community. She is a member of the Organized Communities Against Deportations (OCAD) and the West Suburban Action Project (PASO), and has spoken out against ICE's enforcement policies, particularly the increased arrests, detentions, and deportations within her community. *See* Laura Rodriguez, "The Future of an Activist Grandmother Slated for Deportation to be Defined Tomorrow," CHICAGO TRIB., Aug. 30, 2017, http://www.chicagotribune.com/hoy/chicago/ct-hoy-the-future-of-an-activist-grandmother-slated-for-deportation-to-be-defined-tomorrow-20170830-story.html. In September of 2015, Ms. Ramirez participated in the "100 Women, 100 Miles" pilgrimage from Philadelphia to Washington, DC, to advocate for undocumented immigrants during Pope Francis's visit to Washington, DC. *Id.*

## B.  Ms. Ramirez's U Visa Application

22.     On February 25, 2015, Ms. Ramirez was the victim of a felonious assault. On that morning, Ms. Ramirez was about to exit her home to take her grandson to school. Two individuals forced entry into her home. One of the perpetrators pulled Ms. Ramirez by the arm,

5

threw her towards a wall, proceeded to insult her, dragged her by the arm towards the kitchen, and then threw her down the basement stairs. The same perpetrator also threw Ms. Ramirez's seven-year-old grandson down the stairs.

23. Ms. Ramirez cooperated with the Berwyn Police Department in the investigation of the crime. The Berwyn Chief of Police signed for Ms. Ramirez a U visa certification form, a prerequisite for a U visa.

24. Ms. Ramirez suffered physical, emotional, and psychological harm as a result of the home invasion.

25. On September 22, 2016, Ms. Ramirez filed a U visa application based on the felonious assault. Ex. B, Receipt Notice.

26. On September 17, 2017, Ms. Ramirez requested that USCIS expedite adjudication of her U visa application. Ex. C, Email from Counsel to USCIS Vermont Service Center. Counsel received an automatic reply stating that if the application was within normal processing times, USCIS would not respond to the inquiry. Ex. D, Auto-Response Email from USCIS. Because Ms. Ramirez's application is within purportedly "normal" processing times, counsel does not expect a response.

### C.  ICE's Recent Actions to Remove Mr. Ramirez

27. In 2013, Ms. Ramirez was stopped for failing to use a turn signal in DuPage County, and was arrested for driving without a license.[1]

28. After the arrest, ICE took her into custody. ICE detained Ms. Ramirez for about a week before granting her a stay of removal and releasing her on an order of supervision. Ms.

---

[1] Notably, at the time Illinois law did not permit her to obtain a driver's license.

Ramirez had yearly check-ins with ICE until 2015. Thereafter, ICE told her she no longer needed to check in.

29. In January 2016, ICE continued her stay of removal until March 2017.

30. On May 10, 2017, Ms. Ramirez received a letter from ICE scheduling her for an in-person check-in. When she went for a check-in, ICE told her to return in August, and to be ready to buy plane tickets and depart shortly thereafter.

31. Ms. Ramirez filed a stay of removal with ICE on May 26, 2017.

32. Ms. Ramirez went back to the ICE offices for a check-in on August 31, 2017. Her attorney, Mony Ruiz-Velasco and several elected officials accompanied her to the check-in, including Congresswoman Jan Schakowsky, Representative Chris Welch, Representative Lisa Hernandez, Commissioner Chuy Garcia, Alderman Carlos Rosa, Alderman Rick Munoz, as well as representatives from Senator Richard Durbin and Congressman's Luis Gutierrez's office and representatives from the Mexican Consulate of Chicago.

33. It was clear to those present that ICE "did not appreciate" the presence of the delegation and complained about them overcrowding the waiting room. Ex. F, Letter from Representative Jan Schakowsky. After a period of time waiting for the appointment, Representative Schakowsky asked to speak to the Field Office Director, Defendant Ricardo Wong. *Id.* Her "request was initially ignored and was only honored after my staff communicated directly with the ICE Office of Congressional Relations." *Id.*

34. Finally, after two hours, ICE called Ms. Ramirez back for her check-in appointment. But the ICE officials would not let Representative Jan Hernandez accompany her, even though she had signed the appropriate privacy waivers. Ex. G, Letter from Representative Jan Hernandez. Defendant Mr. Wong came out to address the situation. According to

7

Representative Hernandez, "He was disrespectful and insisted that I was not allowed in the interview. He mentioned that things were different now with the new President and that everyone was a priority." *Id.* Mr. Wong also stated, "[I]f he wanted to, he could detain Ms. Ramirez at any moment." *Id.* After persistent efforts, Mr. Wong finally allowed Representative Hernandez to accompany Ms. Ramirez, her constituent, to her the check-in interview.

35. Representative Schakowsky described ICE's actions that day as "inappropriate and cruel." Ex. F.

36. At the check-in, ICE denied her stay request because of her arrest for driving without a license, an incident that ICE was aware of when granting her earlier stay requests. *See* Ex. H, Stay Denial. ICE instructed her to return on September 28, 2017, with plane tickets to Mexico. ICE also gave her a deadline of October 26, 2017, by which she must voluntarily depart or ICE will forcibly remove her.

## LEGAL BACKGROUND

### A. The Mandamus Act

37. Under 28 U.S.C. § 1361, the federal mandamus statute, this Court has "original jurisdiction in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

38. "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002) (internal citations omitted).

### B. The Administrative Procedure Act

39. Under the Administrative Procedure Act (APA), the Court is authorized to compel agency action that has been unreasonably delayed. 5 U.S.C. § 706(1).

40. An agency must "conclude a matter presented to it . . . within a ***reasonable*** time." 5 U.S.C. § 555(b) (emphasis added).

41. Assessing reasonableness frequently involves a balancing test, in which a statutory requirement is a very substantial factor. *See Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 77-78 (D.C. Cir. 1984).

42. In determining the reasonableness, this Court has applied a four-factor test:

> (1) Whether the time the agency takes to make a decision is governed by a rule of reason, the context for which may be supplied by an enabling statute that provides a timetable or other indication of the speed with which Congress expects the agency to proceed;
>
> (2) whether human health and welfare are at stake (delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake);
>
> (3) the effect of expediting delayed action on agency activities of a higher or competing priority; and
>
> (4) the nature and extent of the interests prejudiced by the delay.

*Mohamed v. Dorochoff*, No. 11 C 1610, 2011 WL 4496228, at *5 (N.D. Ill. Sept. 22, 2011).

### C. The U Visa Adjudication Process

43. In 2000, Congress created a new visa category for immigrant victims of crime who cooperate with law enforcement in the investigation or prosecution of a crime. *See* Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Pub. L. No. 106–386, 114 Stat. 1464 (2000).

44. Congress enacted the U visa provision to strengthen law enforcement's ability to investigate and prosecute crimes "while offering protection to victims of such offenses in

9

keeping with the humanitarian interests of the United States." VTVPA, Pub.L. 106–386, at § 1513(a)(2)(A). "This visa will encourage law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens." *Id.*

45. To be eligible for a U visa,[2] an applicant must show: (1) she was the victim of a enumerated crime in violation of law;[3] (2) she "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity"; (3) she possesses information concerning the criminal activity; and (4) she helped or is helping law enforcement or prosecutors in the investigation or prosecution of criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U)(i)(III).

46. There is an annual statutory cap on U visas. By statute, USCIS may only issue 10,000 visas per year. 8 U.S.C. § 1184(p)(2). In the past several years, U visa applications have far exceeded the 10,000-per-year cap, resulting in a backlog of nearly 90,000 U visa applications awaiting adjudication.

### 1. The Regulatory Waiting List Process

47. To address this backlog, USCIS enacted a regulatory "waiting list," whereby USCIS conducts an initial adjudication and places "eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status . . . on a waiting list." 8 C.F.R. § 214.14(d)(2). While on the waiting list, USCIS will grant the applicant deferred action and may grant work authorization. *Id.*

48. According to USCIS's published processing times, it currently takes three years to adjudicate this first phase of adjudication; *i.e.*, to be placed on the waiting list. *See* Ex. E, USCIS Vermont Service Center processing times.

---

[2] These visas are referred to as "U" visas due to their placement in the statute at 8 U.S.C. § 1101(a)(15)(U).
[3] Listed at 8 U.S.C. § 1101(a)(15)(U)(iii).

### 2. The Prima Facie Determination Process

49. If a U visa applicant is *prima facie* eligible for a U visa, the Secretary of Homeland Security "may grant the alien an administrative stay of a final order of removal" until USCIS adjudicates the U visa application and that adjudication is administratively final. 8 U.S.C. § 1227(d)(1).

50. There are no regulations setting forth a procedure for making the *prima facie* determination described in § 1227(d)(1). Rather, it is governed by ICE policy, and ICE policy sets forth mandatory steps relating to the *prima facie* determination process. In the absence of such policy, there is no published guidance about the procedure for obtaining a *prima facie* determination.

51. According to the policy memorandum, when an individual with a pending U visa application applies for a stay of removal, the local ICE Detention and Removal Operations office must contact the local ICE Office of Chief Counsel who then, in turn, submits a request to USCIS for a *prima facie* adjudication of the U visa. *See* Memorandum, David Venturella, ICE Acting Director to ICE Field Office Directors, *Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants*, Sept. 24, 2009 [hereinafter 2009 ICE Stay Request Memo], https://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf.

52. If USCIS finds that the applicant is *prima facie* eligible for a U visa, ICE "should view a Stay [of removal] request favorably, unless serious adverse factors exist." *Id.* at 3. And "[i]f the FOD finds that serious adverse factors exist and is inclined to deny the Stay request despite the USCIS prima facie eligibility finding, the FOD must provide a summary of the case to DRO Headquarters for further review." *Id.*

11

## COUNT I

### Writ of mandamus ordering DHS to make a *prima facie* determination.

53. Ms. Ramirez repeats and realleges the allegations contained in paragraphs 1 through 52 here.

54. DHS failed to make a *prima facie* determination relating to Ms. Ramirez's U visa application before ICE denied her stay application.

55. Ms. Ramirez has a clear right to a *prima facie* determination of her U visa application. The Secretary of Homeland Security has a duty to make a *prima facie* determination under 8 U.S.C. § 1227(d)(1).

56. No other adequate remedy is available. Ms. Ramirez is facing a deadline to depart by October 26, 2017. A finding that she is *prima facie* eligible for a U visa is very likely to lead to a stay of removal from ICE, according to ICE's 2009 policy memo.

57. Ms. Ramirez has exhausted her administrative remedies. Counsel for Ms. Ramirez contacted ICE on September 11, 2017, asking the agency to seek a *prima facie* determination from USCIS, as outlined in the 2009 ICE Stay Request Memo. *See* Ex. I, Email from Counsel to ICE. Counsel has not received a response to that request.

## COUNT II

### The Department of Homeland Security violated the Administrative Procedure Act, 5 U.S.C. § 706(1), by failing to make a *prima facie* determination.

58. Ms. Ramirez repeats and realleges the allegations contained in paragraphs 1 through 57 here.

59. DHS violated the Administrative Procedure Act by failing to make a *prima facie* determination of Ms. Ramirez's U visa application as required by 8 U.S.C. § 1227(d)(1).

60. As such, DHS has "unlawfully withheld" agency action in violation of the APA, 5 U.S.C. § 706(1).

61. Ms. Ramirez has exhausted her administrative remedies. Counsel for Ms. Ramirez contacted ICE on September 11, 2017, asking the agency to seek a *prima facie* determination from USCIS, as outlined in the 2009 ICE Stay Request Memo. *See* Ex. I, Email from Counsel to ICE. Counsel has not received a response to that request.

## COUNT III

**USCIS violated the Administrative Procedure Act by failing to place Ms. Ramirez on the U visa "waiting list" in a reasonable amount of time.**

62. Ms. Ramirez repeats and realleges the allegations contained in paragraphs 1 through 61 here.

63. Ms. Ramirez's U visa petition has been pending for nearly twelve months. *See* Ex. B, U Visa Receipt Notice.

64. USCIS has not adjudicated Ms. Ramirez's application in a reasonable time. *See* 5 U.S.C. § 555(b).

65. Serious adverse factors exist in Ms. Ramirez's case that make USCIS's delays unreasonable as applied to her under the four-factor test laid out in *Mohamed,* 2011 WL 4496228, at *5.

> (1) ***Whether human health and welfare interests are at stake.*** This case is not about economic interests. It is about whether ICE will imminently deport Ms. Ramirez back to Mexico in a matter of weeks, away from her children and grandchildren, for whom she is the primary caregiver.
>
> (2) ***The effect of expediting delayed action on agency activities of a higher or competing priority.*** Ms. Ramirez recognizes that there are others awaiting the

first phase of adjudication for a U visa. But Ms. Ramirez's interests are substantially different, as ICE has given her an imminent deadline in which she will be sent back to Mexico. So while there might be others ahead of her in line, those individuals do not have the same urgent need for adjudication of their U visa applications.

(3) *The nature and extent of the interests at stake.* For Ms. Ramirez, the nature of the interests at stake could not be more compelling—her ability to stay in the United States with her family. Irreparable harm will result from Ms. Ramirez's departure or deportation. If ICE forces Ms. Ramirez to leave the country, she will necessarily need to await adjudication of her U visa in Mexico. This will take at least two years. And once her U visa is adjudicated, there is no certainty that she will be able to reenter, as she will need to seek a waiver from USCIS.

(4) *Rule of reason.* USCIS adjudicates U visa petitions in the order they receive them. While that rule makes sense for those individuals who are under no threat of deportation, USCIS's rule is unjustifiable as it pertains to individuals like Ms. Ramirez who are facing imminent deportation. Further, while USCIS may only grant 10,000 visas per year, Ms. Ramirez does not seek one of those 10,000 visas. She is merely asking USCIS to conduct the first phase of adjudication and place her on the U visa waiting list so that she may receive deferred action from removal. 8 C.F.R. 214.14(c)(1)(ii). There is no numerical limit for the waiting list adjudication. *See id.* ("All eligible petitions who, due

solely to the cap, are not granted U-1 nonimmigrant status *must be placed on a waiting list . . . .*")

66. Ms. Ramirez has exhausted her administrative remedies. Counsel for Ms. Ramirez has asked USCIS to expedite its adjudication of her application. *See* Ex. C.

**PRAYER FOR RELIEF**

A. Assume jurisdiction over this matter;

B. Issue a writ of mandamus ordering DHS to make a determination whether she is *prima facie* eligible for a U visa;

C. Issue a writ of mandamus ordering ICE to re-adjudicate Ms. Ramirez's stay request once USCIS makes a *prima facie* determination;

D. Declare that DHS's failure to make a *prima facie* determination regarding Ms. Ramirez's U visa application violates 5 U.S.C. § 706(1);

E. Order DHS to make a *prima facie* determination in Ms. Ramirez's case under 5 U.S.C. § 706(1);

F. Order ICE to re-adjudicate Ms. Ramirez's stay request once USCIS makes a *prima facie* determination under 5 U.S.C. § 706(1);

G. Declare that USCIS has not made a "waiting list" determination regarding Ms. Ramirez's U visa application "within a reasonable time," in violation of the APA, 5 U.S.C. § 555(b);

H. Order USCIS to make a "waiting list" adjudication on Ms. Ramirez's application;

I. Attorneys' fees and costs;

J. Any other relief the Court deems equitable, just, and proper.

Dated: September 18, 2017	s/ Katherine Melloy Goettel
	Katherine Melloy Goettel
	Mark Fleming
	NATIONAL IMMIGRANT JUSTICE CENTER
	208 South LaSalle Street, Suite 1300
	Chicago, Illinois 60604
	Tel: (312) 660-1335
	Fax: (312) 660-1505
	Email: kgoettel@heartlandalliance.org
	Email: mfleming@heartlandalliance.org